UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 11-40501 |
| | ) | Chapter 7 |
| KENT A. VUCUREVICH | ) | |
| SSN/ITIN xxx-xx-7380 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| U.S. BANK, N.A. | ) | Adv. No. 12-4005 |
| | ) | |
| Plaintiff | ) | |
| -vs- | ) | DECISION RE:  PLAINTIFF |
| | ) | U.S. BANK, N.A.'S MOTION |
| KENT A. VUCUREVICH | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |

The matter before the Court is Plaintiff U.S. Bank, N.A.'s Motion for Summary Judgment.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  For the reasons discussed below, the Court will grant the motion, and an order and judgment will be entered denying Debtor-Defendant Kent A. Vucurevich a discharge of debts.

I.

Several creditors filed an involuntary chapter 7 petition against Kent A. Vucurevich ("Debtor").  An order for relief was entered.  U.S. Bank, N.A. ("Bank") timely commenced an adversary proceeding seeking a determination Debtor should be denied his general discharge of debts pursuant to 11 U.S.C. § 727(a)(2), (3), (4)(A), and (5) and alternatively seeking a declaration Bank's particular claim against Debtor should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2) and (6) (doc. 1).  Debtor timely answered (doc. 13).  The adversary proceeding was held in

abeyance while other denial of discharge complaints against Debtor were resolved.

Eventually, Bank moved for summary judgment under 11 U.S.C. § 727(a)(3), (a)(4)(A), and (a)(5) and filed a statement of material facts (doc. 29). Debtor did not contest several of Bank's statements of material fact (doc. 37-1):

> 25. Debtor does not have a bank account but runs everything on a cash basis. *Source: Kent Vucurevich's deposition (hereinafter "K.V. depo."), vol. II, taken June 27, 2012, page 302, Doc. 51 in Adv.* [No.] *12-4002.*[1]

> 32. Neither Debtor's original SOFA nor Amendments, disclose transfers within the last 2 years of Debtor's interest in KCC One Real Estate, LLC for $250,000.00 [or the] transfer as security [of] Debtor's interest in 57th and Louise Partners, LLC. *Source: Doc. 48* [dated June 22, 2012] *in Arietis Adv.* [No. 12-4002] *and Answer to Interrogatory No. 8, paragraphs 9 and 10.*

> 47. Debtor only deals in cash*. Source: K.V. depo., vol. II, pages 236-238.*

> 57. Debtor considers himself a sophisticated business person and has been a banker. *Source: first §341 meeting, page 10, attached Exhibit 28A, 28B, 28C, §341 transcript page 101.*[2]

> 64. When asked where all the funds went from all the sales of his business entities, Debtor[']s only response was that a lot went to

---

[1]Debtor's statement of disputed material facts (doc. 37-1), wherein Debtor agreed with Bank's statements nos. 25 and 47 regarding Debtor's dealing only in cash, was filed February 21, 2014. In a June 27, 2012 deposition, Debtor also acknowledged he "run[s] on a cash basis[.]" However, in his June 13, 2012 response to a different plaintiff's request for admissions in Adv. No. 12-4002, Debtor denied any *business* transactions between 2008 and 2011 were done in cash. The Court relies on Debtor's acknowledgement made February 21, 2014 because it is the most recent and consistent with his deposition testimony and because Debtor has produced limited business records for transactions after 2009.

[2]The Court was unable to locate in the record for Bankr. No. 11-40501 or its related adversary proceedings an official transcript of the referenced meetings of creditors. Bank should have had the complete transcripts filed so they were a part of the record before it referenced the transcripts in its summary judgment documents. Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c)(1)(A). The same is true regarding the depositions of Thomas Vucurevich and Claudia Vucurevich that Bank referenced. Debtor, however, lodged no objection to Bank's miscues nor identified any resulting harm.

reinvesting, debt payments and distributions to himself.  *Source: Exhibit 34B.*[3]

As to several other facts stated by Bank, Debtor provided qualified responses

(Bank's statements of fact are listed first, followed by Debtor's responses):

42.  Debtor has very limited business records, admitting he threw away records.  *Source:  K.V. depo., vol. I, pages 55 and 56.*

43.  Debtor failed to maintain business records but instead allowed previous employees to take computers, with all business records on them, while Debtor did not retain a copy.  *Source:  K.V. depo., vol. I, pages 63, 64, 66 and 67.*

44.  Debtor uses emails extensively in business transactions.  *Source: K.V. depo., vol. I, page 70.*

45.  Debtor has set up his email system to automatically purge all emails after 2 weeks, starting in the year 2008.  *Source:  K.V. depo., vol. I, pages 70 and 71.*

46.  After lawsuits started against Debtor, and after discovery requests, Debtor made the decision that no records or emails would be saved. Debtor decided everything was to be deleted even from the hard drive. *Source:  K.V. depo., vol. I, page 128.*

> 42.  SMF #42 through 46 are contested.  Debtor stopped maintaining records for entities that were foreclosed upon and were no longer doing business.  At the time this decision was made Debtor had no intention of filing for bankruptcy.

65.  Debtor admits, under oath, that he does not have accurate records to account for his business entity sales.  *Source:  Exhibit 34B.*

> 65.  SMF #65 is contested.  Debtor clarifies that accurate records would exist once files were reviewed by an

---

[3]Both parties referenced Exhibit 34B that Bank attached to its Statement of Material Facts (docs. 29-1 and 29-3), but the Court was unable to find a clear description of what Exhibit 34B is.  The Court has surmised it is a page from a transcript of one of the meetings of creditors held in Debtor's main bankruptcy case, Bankr. No. 11-40501.  *See supra* note 2.  The docket in Bankr. No. 11-40501 indicates meetings of creditors were held–or at least scheduled for–September 16, 2011, October 21, 2011, and December 2, 2011.

accountant.  *Plaintiff's Exhibit 34B.*

In support of its motion for summary judgment, Bank appended many documents to its motion, including numerous e-mails between Debtor and family members and some related documents, excerpts from some depositions, documents evidencing a loan and some transactions between Debtor and Attorney Brian J. Bauer, and portions of an uncertified transcript of the meeting of creditors in Debtor's main bankruptcy case.  In its brief, Bank focused on Debtor's statements that he only deals in cash and has limited business records and on Debtor's questionable deals with family members regarding some assets.

In his brief in support of his objection to Bank's motion, Debtor claims several material facts are in dispute and argues the facts not in dispute fail to establish Bank is entitled to judgment as a matter of law (doc. 37-2).  He also argues any failure to maintain business records is justified, stating:

> The majority of Debtor's assets were real estate investments. When the real estate market crashed in 2008, Debtor's investments lost their value and creditors foreclosed on the investments.  This resulted in 39 lawsuits being filed against the Debtor between 2009 and 2011. Unable to defend against these lawsuits and foreclosures, most of the various entities the Debtor had in [sic] interests in lost their value. Debtor saw no need to maintain records for these now defunct entities that held no assets.  Debtor was overwhelmed by the sheer volume of lawsuits and foreclosures and was unable to maintain clear, up-to-date records of assets, liabilities, and judgments.
>
> It was under these circumstances that Debtor was forced into an involuntary bankruptcy.  Debtor did not voluntarily avail himself of the protections of the bankruptcy code.  Debtor was forced into this matter by various creditors.  In assessing Debtor's level of care in maintaining records, one must consider that Debtor did not plan on filing for bankruptcy.  Debtor always maintained a belief that he would be able to work out settlements with his various creditors.

Debtor was overextended with real estate investments and was hit hard when the market crashed. He did not have [the] resources to maintain accurate records of the scores [of] lawsuits and foreclosures that were brought upon him. Debtor did require several amendments to his bankruptcy schedules to provide complete and accurate information. Given the complexity of Debtor's financial situation and the involuntary nature of the proceedings, Debtor's delay in providing complete information is justified.

Regarding his loss of assets, in his brief Debtor says:

The assets [Bank] discusses in [its] brief were used to provide living expenses for the Debtor and his estranged wife and kids. Debtor also used the funds to service debt and reinvest in other projects. Debtor has repeatedly and consistently maintained that this is where these funds went. Debtor['s] explanation creates a disputed question of material fact. Whether Debtor's explanations are adequate is not appropriate for summary judgment.

II.

*Summary judgment*. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(a). An issue of material fact is *genuine* if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (quotes therein). A genuine issue of fact is *material* if it might affect the outcome of the case. *Id.* (quotes therein).

The matter must be viewed in the light most favorable to the party opposing the motion. *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997). Where motive and intent are at issue, disposition of the matter by summary judgment may be more difficult. *Cf. Amerinet, Inc. v. Xerox Corp.,* 972 F.2d 1483, 1490 (8th Cir. 1992) (citation omitted).

The movant meets his burden if he shows the record does not contain a genuine

issue of material fact and he points out that part of the record that bears out his assertion. *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (quoting therein *City of Mt. Pleasant, Iowa v. Associated Electric Coop., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988)).  No defense to an insufficient showing is required.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (citation therein); *Handeen*, 112 F.3d at 1346.

If the movant meets his burden, however, the nonmovant, to defeat the motion, "must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)).  The nonmovant must do more than show there is some metaphysical doubt; he must show he will be able to put on admissible evidence at trial proving his allegations.  *Bell*, 106 F.3d at 263 (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995)).

*Denial of discharge*.  Since the denial of a debtor's discharge is a harsh remedy, the provisions of 11 U.S.C. § 727(a) are strictly construed in the debtor's favor.  *Kaler v. Charles* (*In re Charles*), 474 B.R. 680, 683-84 (B.A.P. 8th Cir. 2012).  The party seeking the denial of the discharge must prove each element under § 727(a) by a preponderance of the evidence.  *Id*.

III.

Bank is entitled to judgment as a matter of law, and Debtor's general discharge of debts will be denied under 11 U.S.C. § 727(a)(3).  Section 727(a)(3) provides:

> The court shall grant the debtor a discharge, unless–
>                          . . . .
>            (3) the debtor has . . . failed to keep or preserve any

-6-

> recorded information, including books, documents, records,
> and papers, from which the debtor's financial condition or
> business transactions might be ascertained, unless such act
> or failure to act was justified under all of the circumstances
> of the case[.]

The party seeking the denial of the debtor's discharge under this provision has to show the debtor's financial records are inadequate. *McDermott v. Swanson* (*In re Swanson*), 476 B.R. 236, 240 (B.A.P. 8th Cir. 2012). If that burden is met, the debtor must then go forward and show the failure to keep adequate records was justified under the circumstances. *Id.*; *Floret, L.L.C. v. Sendecky* (*In re Sendecky*), 283 B.R. 760, 764 (B.A.P. 8th Cir. 2002). Circumstances to consider include the debtor's education, business sophistication, personal financial structure, and the size of the debtor's business. *Sendecky*, 283 B.R. at 764. Section 727(a)(3) does not contain an "intent" element; instead, it imposes a standard of reasonableness. *Davis v. Wolfe* (*In re Wolfe*), 232 B.R. 741, 745 (B.A.P. 8th Cir. 1999). If the burden has shifted to the debtor, the debtor must show he took "such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate[.]" *Id.* (citing *First State Bank of Newport v. Beshears* (*In re Beshears*), 196 B.R. 468, 474 (Bankr. E.D. Ark. 1996) (quoting *Koufman v. Sheinwald*, 83 F.2d 977, 980 (1st Cir. 1936))).

The privilege of receiving a discharge of debts hinges on disclosure, *Broad Nat'l Bank v. Kadison*, 26 B.R. 1015, 1018 (D.N.J. 1983) (cited in *Dickinson v. Pohle* (*In re Pohle*), 2011 WL 1085787, at *3 (Bankr. S.D. Iowa March 21, 2011)); the trustee and the creditors are entitled to "accurate information showing what property has passed through the debtor['s] hands prior to bankruptcy." *Southern Bancorp South*

*v. Richmond* (*In re Richmond*), 430 B.R. 846, 871 (Bankr. E.D. Ark. 2010).  Debtor cannot, by his own admission, meet his obligation of disclosure.

Foremost, Debtor concedes he has, in the recent past, operated on a cash only basis, thus depriving the case trustee and his creditors of account records as a critical source of information regarding his transactions.  Debtor also concedes that, beginning not later than January or February 2009, after being sued by "Lockhart" and complying with a particular discovery request, he began to systematically have his e-mails deleted after two weeks.[4]   These concessions are, in light of all the circumstances, sufficient to satisfy Bank's initial burden under § 727(a)(3) and shift the burden to Debtor to show his failure to keep better records was justified under the circumstances.

Debtor is, by his own admission, a sophisticated business person who once worked as a commercial lender for a bank.  He had a computerized business office, a filing system, and staff until 2009 and had—and still has—an outside accountant.  Debtor had numerous business ventures of notable size and some variety, ranging from business complexes to ATM machines.  In light of these circumstances, Debtor would understand "ordinary fair dealing and common caution" dictate that his business record-keeping not be abandoned when financial troubles arise, and that it was reasonable for his creditors, taxing authorities, and regulatory authorities to expect he

---

[4]In his Statement of Disputed Material Facts, Debtor did not contest Bank's statement that "Debtor has set up his email system to automatically purge all emails after 2 weeks, starting in the year 2008."  Bank cited Debtor's June 26, 2012 deposition at pages 70-71.  Later during the deposition, however, at pages 128-29, Debtor's testimony indicates his practice of purging e-mails began in January or February 2009.

would maintain appropriate records even as numerous business entities faltered or failed or when his records changed locations.  *Wolfe*, 232 B.R. at 745; *Malloy v. Goldstein* (*In re Goldstein*), 123 B.R. 514 (Bankr. E.D. Pa. 1991).  Business people do not get a pass regarding record-keeping because they are unsuccessful; if that were true, § 727(a)(3) would be toothless.  *Cf. 8400 N.W. Expressway, LLC v. Morgan* (*In re Morgan*), 360 B.R. 507, 536 (Bankr. N.D. Tex. 2007) (while a debtor's creditors are entitled to examine a debtor's personal records and his business records, a debtor is not required to keep records indefinitely for a failed business).  Moreover, Debtor's declaration in his Statement of Disputed Material Facts (doc. 37-1) that "accurate records would exist once files were reviewed by an accountant" was illusory if not delusory.  While the record indicates Debtor made a similar statement during a meeting of creditors in late 2011, Debtor is still unable to identify any admissible evidence he can produce at trial to substantiate and refine his heretofore sweeping statements—in his deposition and in his brief—that he used asset proceeds for family living expenses, debt repayment, and reinvesting in projects.  Thus, when all circumstances are considered, Debtor is unable to justify his lack of records.

Bank is also entitled to judgment as a matter of law under 11 U.S.C. § 727(a)(5).  Section 727(a)(5) provides:

> The court shall grant the debtor a discharge, unless–
> . . . .
> > (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

If the party seeking a denial of discharge establishes there is a deficiency of assets,

the burden then shifts to the debtor to explain the loss.  *Sendecky*, 283 B.R. at 766.

The debtor is not entitled to a discharge if his explanation is "too vague, indefinite, or

unsatisfactory."  *Id*. (quoting *Diamond Bank v. Carter* (*In re Carter*), 203 B.R. 697, 707

(Bankr. W.D. Mo. 1996).  Instead, the Court must be satisfied no assets are missing.

*Sendecky*, 283 B.R. at 766.

Debtor's schedules, as amended, show Debtor has personal property assets

valued at $2,061,245.00 and secured and unsecured claims against him of

$45,180,164.21.  Thus, Bank's burden to show a deficiency in assets is met.  Debtor,

however, has not identified what admissible evidence he can produce at trial to explain

the loss.  In his June 26, 2012 deposition, Debtor acknowledged his records for 2009

to the date of filing are poor, if not missing.   He also admitted, in answers to

interrogatories filed June 22, 2012 in Adv. No. 12-4002 and in his June 26, 2012

deposition, some information in his schedules and statements in Bankr. No. 11-40501

remains, even after some amendments, incomplete or inaccurate.  Thus, we are left

with only Debtor's sweeping explanation that he used some assets to provide for his

estranged wife and children, service debt, and reinvest in other projects.  Those

general statements, however, do not, as Debtor hoped, create a triable question of

fact.  Instead, his explanation is vague, indefinite, and unsatisfactory, *Carter*, 203 B.R.

at 707, and the Court has little before it that provides assurance assets are not

missing from the bankruptcy estate, *Sendecky*, 283 B.R. at 766.

In this circuit,

[a]n important component in ascertaining the reasonableness of any
explanation [by a debtor under § 727(a)(5) is the] capacity for
verification; that is, is the explanation sufficient to enable either the

trustee or a creditor to properly investigate the circumstances surrounding the loss or deficiency.

*Allred v. Vilhauer* (*In re Vilhauer*), 458 B.R. 511, 514-15 (B.A.P. 8th Cir. 2011) (quoting *Baker v. Reed* (*In re Reed*), 310 B.R. 363, 370 (Bankr. N.D. Ohio 2004)). Here, Debtor has offered only his own unsubstantiated, uncorroborated, and undocumented general statements about where his assets went, *Vilhauer,* 458 B.R. at 515, and the prospect of an accountant's aid at some unknown time.  That is clearly not enough to avoid summary judgment denying him a discharge under § 727(a)(5).

The Court will not summarily deny Debtor a discharge under § 727(a)(4)(A), which requires a showing of both materiality and intent to defraud.  *Charles,* 474 B.R. at 684 (under § 727(a)(4)(A), the plaintiff must show:  (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the debtor's bankruptcy case); *Korte v. I.R.S.* (*In re Korte*), 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001).  Although intent can be established by circumstantial evidence and statements made with reckless indifference to the truth are regarded as intentionally false, *id*., Debtor's fraudulent intent is not readily discerned from the present record, *Demerath Land Co. v. Sparr,* 48 F.3d 353, 355 (8th Cir. 1995) (while summary judgment should be granted with caution where intent is at issue, it may be appropriate if the non-moving party rests only on "conclusory allegations, improbable inferences, and unsupported speculation") (citations therein). To make an appropriate ruling regarding intent under § 727(a)(4)(A) in this adversary

proceeding, the Court prefers testimony from Debtor, his parents, and some of Debtor's business associates to consider their respective credibility. As to materiality, the record is not abundantly clear what statements and schedules are inaccurate and to what extent. In particular, the present record is too jumbled for the Court to ascertain, to its satisfaction, what business interests may not have been appropriately disclosed in Debtor's present schedules and statements, especially where some business interests owned by Debtor held title to other business interests and where some assets were transferred, at unknown times and for unclear consideration, from Debtor or Debtor's business entities to Debtor's business associates and their business entities, his parents, his parents' business entities, and his parents' trust. These still-tangled webs clearly support summary denial of Debtor's discharge under § 727(a)(3) and § 727(a)(5), but in this particular adversary proceeding, the same record does not also dictate summary denial of Debtor's discharge under § 727(a)(4)(A).

An appropriate order and judgment will be entered.

Dated: July 9, 2014.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

**NOTICE OF ENTRY**
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered
on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota